The final case for argument is 18-1305, Rubies Costume Company v. United States. This case is 18-1305, Rubies Costume Company v. United States. This case is 18-1305, Rubies Costume Company v. United States. Good morning, your honors. My name is Glenn Ripa. May it please the court, I represent the appellant, Rubies Costume Company. This is a tariff classification case with respect to an imported Santa Claus costume to determine the custom duties and whether or not they are. What does this come down to? Is this, I'm very, it's very confusing to me because we're dealing with exceptions to exceptions, but we're required to abide by our precedents. So tell us how you prevail. The question is the jacket and the pants, right? Yeah, that's pretty much it. And your view is that these are not apparel, these are festive articles and they don't come with the exception of fancy dress? Yes. Let's talk about the main issues with respect to our defense on that issue of two things. The festive article issue. We believe that the evidence is overwhelming that this meets the standard of festive articles in the sense that it's something that is prepared for the holidays and is used exclusively during the holidays. But the question is, and we're not operating on a clean slate here. We've got several opinions that deal with this. The question is whether or not these articles come within the fancy dress exception. Well, that is the second argument that we have. And we believe it's a very, very strong argument. And that is that this costume doesn't meet wearing apparel standards. And that is critical in this case. And unfortunately, the lower court judge did not allow the testimony and the expert report of our expert witness. But our expert witness laid out in very good detail with respect to her report and her depositions, the issues that would show that this is not fancy dress. What we're talking about, there are several cases with respect to the issue that fancy dress has to meet ordinary wearing apparel standards. And we brought somebody in from the wearing apparel industry that knew the wearing apparel industry very, very well and went over a litany of reasons why this isn't wearing apparel. But wasn't that a testimony excluded? That's the other issue that we're appealing on is there was really no reason. And we believe it's reversible error. I mean, Judge Barnett gave extensive reasons for why under Daubert he thought she wasn't qualified to apply on the issue. And don't we review that for abuse of discretion? Yes, absolutely. Because if you look at her resume and all the details with respect to her background, she was perfect for this. They tried to categorize her as a fashion woman. She was in the wearing apparel industry for, I think, 30 years. And to say that she wasn't qualified, they were kind of making it like- I didn't read him as saying that she was necessarily unqualified, but that the opinion she was expressing wasn't directed to the relevant inquiry. Well, let's talk about that, Your Honor, because that, I believe, is at the heart of this matter. Let's talk about- Let me ask you first this, because you're on a really hard standard on this. Is this the main argument you're relying on, that he should have let this expert report in, and if he had, you would prevail? No. No. I mean, we can talk about this expert report all you want, but I'd rather hear your other arguments and assume we're going to affirm him on excluding this expert report. Well, let's talk about why- I mean, I don't know that we have to, that there's any dispute that that's a festive article. I think we all agree it's a festive article. Is it excluded as fancy dress, specifically under our Rubies II decision? Yeah. I believe the issue here, and it's really that ordinary wearing apparel standard does not comply with this, because- Where does ordinary wearing apparel standard come from? It comes from not only Judge Barnett's decision that this is wearing apparel, and it's a requirement- But we didn't make it up. Is it in the classification system itself? and I have it here, Your Honor, and Judge Barnett ruled in his decision that he found that this was fancy dress. Judge Barnett holds that the costume is- Can we start with the actual classification system and the language describing what fancy dress is? What is it? Well, fancy dress basically has to be a clothing that is durable, non-flimsy in nature, and is normal article of wearing apparel. Wait, wait. Is that in the classification language? That's in the case law. I'm not sure- First, I ask you to start with the classification language. What does the classification standard, they're in 61 and 62- Yes, all right. Describe fancy dress as? Hang on one second. One moment, Your Honor. I want to see if I have that here. What section are we talking about, Your Honor? Because I believe we've got the- I don't know what the statutory classification for fancy dress is. That's the entire part of this case. It's probably- That's why I'm asking you. What's the statutory language in the classification system that defines what fancy dress is? Before we get down this rabbit hole of durable or not, or wearing apparel or not. Can I just ask you this? Is fancy dress, does it mean costumes? Fancy dress, yes. Fancy dress can include costumes. One of the areas that it can include costumes is costumes that would meet wearing apparel standards. The concept of fancy dress is like these ball gowns that you would wear to a costume party that are very fancy, well-made, and would meet wearing apparel standards. How is a ball gown a costume? I thought this meant costumes that you wear at costume parties. Yeah, but it could be a costume like a Cinderella gown. Right. A Cinderella gown could be- But it can encompass any kind of costume that you would wear to a costume party. If it meets the normal standard wearing apparel- Where are you getting this wearing apparel requirement from? Well, the wearing apparel requirement, Judge Burnett held that the Santa Claus costume is fancy dress because it is durable, non-flimsy, and is a normal article of wearing apparel. Rubies, the first Rubies, Rubies Costume Company versus U.S. held that classifying fancy dress, the subject article must be made to wearing apparel quality standards. Is that Rubies you're talking about, the one that references Rubies 2? Yes, that's right, that's right. And the reason that it wasn't, it was indisputably a costume there, right? It was just flimsy. Yes, exactly, that's right. The issue was with respect to- It was Halloween costume, wasn't it? Right, right. And that's the- So is the question, is this flimsy or not? No, we're saying we're agreeing that it's durable, it's not flimsy, but the real problem is- But the basis for finding it not in the fancy dress exception in Rubies 2 was not that it wasn't a Halloween costume. Right. Everybody agreed that it was Halloween costume. Right, exactly. But it was excluded because it was flimsy. Because of three things. It was flimsy, it was non-durable flimsy, and it didn't meet normal wearing apparel standards. Well, those all seem very similar things to me. The normal wearing apparel standards is critical, and that is why- Wait, can I just start then? So do you agree that this is not flimsy? Or wait, let me phrase it the other way. I don't want to have a double negative. This Santa costume is durable and non-flimsy. Yes, we concede that issue, right. And we concede it in our papers. The issue that we challenge is that it does not meet normal wearing apparel standards. Why? Because there are seven reasons why. Counselor? Let's stop for a second. If we're getting the classification language that you're talking about under the prior Ruby's decision, it says, and it's describing what becomes a festive article. So I guess the opposite of this. So we have a flimsy nature and construction, lacking in durability. Then it goes into the third point. I think this is where you're at, and generally not recognized as normal articles of wearing apparel. Right. That's exactly our strong argument. My question to you is, did the court make a finding of fact with respect to not recognize as normal articles of wearing apparel? Yes, it did in the sense that it said that it was a requirement and they found it to be fancy dress. So the fact that Judge Barnett said that- The court, I think, made factual findings with respect to flimsy, durability. But I'm asking you, did the court make any factual findings as to generally not recognize as normal articles of wearing apparel? Judge Barnett held that it's a requirement. And therefore, if he ruled that it was fancy dress, Judge Barnett held that the Santa costume is fancy dress because it's durable, non-flimsy in nature, and a normal article of wearing apparel. Where is that in there? There's a lot covered in this. I think it's on, it's on page 32 of Judge Barnett's opinion. He says, in sum, the jacket and pants constitute fancy dress of adorable, non-flimsy nature and are normal articles of apparel classified pursuant to 61. And your view is that's consistent with the test laid out in movies too? Yes, we agree that that is the standard. But the, you know, our argument with respect to- So we're talking about three categories. Are we reading Ruby's Two? Ruby's Two says these costumes are festive articles. They're not in the fancy dress exception because they meet these three requirements. Right. Do we need all three? I mean, what if we agree, what if we think this is not flimsy and this does not lack durability? Are those two factors sufficient to say- Absolutely not, because the issue is whether or not it's wearing apparel. And- What does normal wearing apparel mean? Well, let's- Because we're already in the festive articles category. Yes. So we're not talking about everyday clothes. Yes, exactly. Exactly. But what we're talking about and the issues are- is festive articles. Yes, that's right. And so what would- This isn't a debate about whether this is a festive article or not. It's a debate about whether it's a fancy dress version of fancy or festive articles. Yes, I think that that is true. I believe at one time that- What does normal wearing apparel mean in that context? It can't mean something you would wear to your place of business. No. Right, because it's a festive article. Right, exactly. But let's talk about some of the issues. Can you talk about what I'm asking you about? Yeah, I'm talking about the facts of why it's not wearing apparel. It's not- It doesn't meet the normal standards of wearing apparel because it's one size fit all, and it's generally not used in wearing apparel. The material used to make the costume is the same material used to make toy-stuffed animals. It's not the kind of material that you would use in normal wearing apparel. Well, let me- The lining is wholly made. Can you- When we start to ask you questions, you have to stop and let us answer it. If somebody goes to a costume party and dresses up in a leopard costume with the mask and everything, and it's durable, it's made of a plush fabric, and all that kind of like- It's a costume for a costume party. Right. That could be fancy dress. It could be fancy dress if it met the ordinary standards of wearing apparel. Well, isn't that an ordinary standard for a leopard costume? No, you wouldn't be looking at what the ordinary standard of a leopard costume is because that wouldn't be- I don't understand what you mean by ordinary wearing apparel then, because it seems to me like you're trying to match kind of everyday clothes when we're out of the everyday clothes category altogether. Yeah, but we're- Let me ask you this. What would constitute a type of fancy dress that's also a festive article? Well, let's talk about- They wouldn't put in the category of ordinary wearing apparel standards if that wasn't a factor to be considered. And what we're talking about is the way a wearing apparel is cut, the way it fits, the type of lining you would make in wearing apparel, the kind of material you would use for normal wearing apparel, and none of these standards are met. We're talking about material- So you basically categorically want us to read out costumes that are too far away from everyday clothes. Yes, I'm saying to you that that- Where does that come from? That's why I ask you. That doesn't seem to be in the classification. That's not the basis of Ruby 2s. The exclusion of Ruby 2s was because it was flimsy and durable. The clear implication of Ruby 2s was if it hadn't been flimsy and durable, it would have been included. Frankly, that's what you argued or your client argued for us in Ruby 2s. Your Honor, I believe the wording in Ruby's 2 is exactly what Judge Barnett said, and let me look at the wording. In Ruby's 2, they use the exact same wording, that it has to meet ordinary wearing apparel standards. Here's the wording from Ruby's 2. It held that classifying as fancy dress, the subject article must be made to wearing apparel quality standards. That's the wording in Ruby's 2. The subject article must be made to wearing apparel quality standards. Counselor, so in the declaration by Mark, is it Beige? Beige. Beige? Beige, yes. So he was making various declarations as to the costumes, that they're sewn in factories that produce only costumes. There's other products, toys, and novelties, but that they don't produce apparel. He talks about the quality requirements, tolerances, and standards for wearing apparel, and things of that nature. Was this declaration admitted by the court? Yes, it was admitted by the judge. Yes, the judge accepted Mark Beige's deposition and his testimony. What they excluded was the expert witness, who we believe fit all the criteria of Rule 702 of the Federal Rules of Evidence. Now, the reason I was asking you, because it seems to me that this raises genuine issues of material fact as to whether we're looking at everyday apparel quality and the state of that quality. Yes, it certainly does. And, Your Honor, going back to the issue of, you know, holding this case on the issue of whether or not we proved our case, our big argument here is that this was an inappropriate case for summary judgment. There were sincere disputes as to the facts in this case. You asked for summary judgment, too. Yeah, we did. But Judge Barnett ruled inconsistently by granting summary judgment. And in numerous sections, he was the one who said that there are material issue. Well, he ruled that there are no material issue of facts. But then everything he said in his opinion was inconsistent with that. I think we're way beyond our time. And I know that's because we've asked you a lot of questions. So we're not putting that on you. We're wasting our time. But I think it's time to hear from the government. Okay. Thank you. Good morning, Your Honors, and may it please the Court. Can you give me a quick definition of wearing apparel and where it comes from? Yes, Your Honor. Wearing apparel is not defined by the Harmonized Tariff Schedule. The definitions we do have is from this Court and its line of cases starting with all the way back in, I believe, going 50 years back. But let's start with Rubies. I'm going to call it the first Rubies, which has been identified in the briefs as Rubies II. And in Rubies II, this Court said that wearing apparel is clothing or garments that are ordinarily worn, clothing or covering for the human body worn for decency and comfort. And in Rubies II, the first Rubies case, this Court – Sure. Because when you're describing us as saying clothing that's ordinarily worn, you don't mean everyday clothes because we're already out of the everyday clothes realm, aren't we? Correct. When we're in festive articles. Yes. Well, garments. Something that covers – a garment isn't necessarily wearing apparel. Wearing apparel has become a term of art from this Court's jurisprudence. And wearing apparel has been defined as what I just gave, and also this Court in Rubies II credited Customs and Border Protection's ruling, which describes certain styling features, such as zippers, finished edges, inset panels, darts or hoops. All those things that this costume has are credited by this Court in the first Rubies decision as being features of wearing apparel. And those all go to quality, construction, and a garment that is ordinarily worn, worn in an ordinary manner, not meant that it's worn to work or a Santa costume in September or July or worn to court here, but that it's put on like a normal top. It zips up like a normal top. The pants go on like normal pants. They have pockets. The jacket has belt loops, and those are all – Why would we distinguish – what's the point? I mean just step back a minute 30,000 feet. Sure. And tell me why we would differentiate for something that nobody would wear outside of the circumstances, the same as a Halloween costume. They're only wearing it on one day a year, and it's only useful as a costume. Nobody would say this is a normal – they use the word normal articles of apparel. Sure, Your Honor. So why would this have been different? Yeah. Well, because of the – Why if something is flimsy but something has a zipper, so we're defining it as – yes, that's a jacket. It's a Santa jacket. So you're saying because it's a jacket, it comes under fancy dress and not under festive. Ruby's decision was tasked with interpreting the congressional intent of the exclusionary note 1E, which I think Judge Hughes was speaking about earlier. And 1E says that what is excluded from the festive article provision of chapter 95 is fancy dress of textiles of chapter 61 and 62. And this court in Ruby's found that the term fancy dress just means costume. That's plain as day from the definitions that the court found. Let me just be – make sure I understand this correctly. When you say it's excluded, you mean it presumptively falls within festive articles but then is excluded specifically by this note. Yes, Your Honor. So it is a festive article. You're not disputing that this isn't a festive article. The government concedes that this is a festive article, and it would be prima facie classifiable in chapter 95 as a festive article unless it meets the definition of fancy dress of textiles of chapter 61. And in Ruby's too, I guess we largely looked, and it seems to me this problem is largely of your own making. In the customs ruling you had in Ruby's too that had this kind of test of durability, ordinary wearing, and the like, which isn't in the statute, and then we adopted, right? Partially, yes, Your Honor. So, I mean, the test is, even though it's from our precedent, it seems like it was from your customs ruling as well. Portions of the test were definitely adopted from the customs ruling that was issued prior to the first Ruby's decision. However, this court also did look at definitions that were developed over the years, I believe, from this court as well as the United States Supreme Court as to what is wearing apparel. So it was a combination of the two. Normal articles. So the term is normal articles of apparel. That's what has been in the case law. There's nothing about that in the statute. The case law says not recognized as normal articles of wearing apparel. Yes, Your Honor. And so when you look at the customs ruling and then the rest of Ruby's too, it goes into, well, what's wearing apparel? And that's where the issue comes in about buttons and zippers and durability and flimsiness, those issues. But they don't answer the question with normal article of wearing apparel. You know, and I think a lot of confusion is whether this is something that would normally be worn as opposed to whether this is a normal article of wearing apparel. A couple of points on that. All right. So getting back to this declaration that I cited to earlier, that declaration seems to me to raise genuine issues of material fact as to whether this is an article of wearing apparel. Because it talks about the way it's sewn, its durability. It goes to the issue of the type of factory that it's made in that only makes toys and doesn't make T-shirts and pants or anything else. Aren't those genuine issues of material fact as to genuine issue as to normal article of wearing apparel? With regard to your second question, respectfully, no, Your Honor. How can it not be? Because we agree. Do you agree with that? We don't disagree with their assessment of the quality, the durability, how it's used, when it's used. And this is well-settled law from this court that in a classification case, when the – how the product is used, when it's used, the nature of the product, the construction of the product are all not an issue. Then it all collapses into an issue of law, and it should be properly decided on summary judgment. And that's what Judge Barnett did here. We do not disagree with anything about this product. How did Judge Barnett actually address this particular issue? Well, Judge Barnett followed this court's precedence in Rubies II and addressed – But Judge Barnett entered summary judgment. Correct. And the opinion talks about the flimsy nature of construction, talks about durability, but not about generally not recognized as normal articles of wearing apparel. I believe Judge Barnett did, and when he looked at the factors that this court considered in the first Rubies decision and found that this article met what the court found was excluded from Chapter 95. We have to – it's important to look at the fact that it was the reverse in Rubies II. Those costumes were cheap, inexpensive, one-time use, slip over the – Going back to where we were a few minutes ago, which is talking about how our court would necessarily define – what did we call it? Normal articles of apparel? Articles ordinarily worn, I believe is the term that was used by this court. Well, I'm reading out of Rubies II, and it says there's not being normal articles of apparel. They go on to say, when an adult or child might wear – this is on the Halloween costumes – might wear a one-size-fits-all costume with its attendant accessories for decency or comfort, such benefits are incidental, and the imports are primarily created for Halloween fun, strongly promoting festive value rather than cognitive association as wearing apparel. Wouldn't that lie the guy standing behind you? Respectfully, no, Your Honor. There is a cognitive association with wearing apparel by the jacket and pants, and that's what Judge Barnett found. It's important to look at footnote two of the first Rubies decision where the description of those costumes – it's very limited, but that's all we have to really go on. We have a description of those costumes there, and those did not meet the cognitive association with wearing apparel because they slipped over the body. Clothing had to be worn underneath them because they were a typical child's Halloween costume that would – So cognitive association is that's a jacket and those are pants. Correct, and I believe Judge Barnett found that. This jacket is a one-size-fits-all. That term has been used. However, I think it said it would – it basically is, Your Honor. That's a term that Judge Barnett – one-size-fits-all. The pants. The pants are held with an elastic, and I'm going to ask the gentleman not to be signaling or anything. I don't know who they are, but the pants are held together by an elastic, correct? Yes. Oh, they have a drawstring, like sweatpants. A drawstring. Like sweatpants. Excuse me, Your Honor? You said like sweatpants? Sweatpants would be very similar to the bottom part of this costume. It has pockets. The flimsy costume in Rubies II, it had straps that you tied together. We have a very limited description, but if you look at footnote two, it seems to indicate a typical, inexpensive child's costume that would – or adult costume that would slip over the body, that would tie in the back, maybe be open. Do you think the wearing apparel factors are secondary to the costume's festive value? If somebody went over and said, okay, you know there's a jacket and pants, but what's – isn't the fact that there's a jacket and pants secondary to the fact that it's a Santa costume you're going to wear at Christmas? That would be logical. However, we have note 1E to Chapter 95, which is a carve-out. We're looking at Rubies II. I'm reading Rubies II. In the paragraph – above the paragraph I just read you, you're talking about the Halloween costumes. To the extent that such elements have any characteristics similar to wearing apparel to costumes of Halloween – to consumers of Halloween costumes, such features are clearly secondary to the costume's festive value. So you get my point, right? That's a little bit of a problem. I understand, Your Honor. However, if we are to give it that interpretation, then we are completely rendering note 1E nuggatory because there's a reason that note – Everything in 1E is a festive article. I don't know if that's 100% true, but we can assume that – In the exception because it's an exception to festive article. Yes. If it's not – if it's in 1E – if it's accepted from festive article by 1E, it's presumably first a festive article and then within the exception. If it's not a festive article at all, then we don't even look at the festive article classification. Correct. And therefore, don't look at the exception in 1E. Correct, Your Honor. So it seems like – at least when I read these briefs, I initially got confused as to some kind of dichotomy between festive article and fancy dress and putting one in one box or the other. But then I don't think that that's the way it operates, right? We're operating under the assumption that everything is a festive article, and then you look to see whether 1E exempts it from festive article what fancy dress is. But it's not excluded from fancy dress because it's a festive article. That sounds really convoluted. That's why this case is baffling. There are layers and layers of exceptions. Your Honor, can I simplify it very easily? Yes. We concede that this garment or this costume is prima facie classifiable or prima facie described by Chapter 95 as a festive article. However, it is excluded from Chapter 95 by Note 1E, which is fancy dress of textiles of Chapter 61 and 62. And we also believe that it is prima facie described by Chapter 61, which is all the different various apparel provisions. And this court has said numerous times that when you have an article that is prima facie described by two competing provisions and one of them is Chapter 95, the article always goes in Chapter 95 except this court held in Michael Simon Design and Park B. Smith except if it's described by one of the exclusionary notes. And in this case, this article is described by Note 1E as fancy dress of textiles of Chapter 61 and 62. That's true, and I'm glad you're going through the steps because that's what we need to do. But this court has interpreted that exclusion. Yes. And we have to go by that precedent. So really, it's the issue back to what we've been talking about, whether this is flimsy, durable, or a normal article of wear and appeal. Yes, Your Honor. And it's recognized as a normal article of wear. That's what Judge Barnett was trying to do. And we would urge this court to follow that precedent. My friend on the other side has conceded that it's not flimsy. It's durable. And I'm still confused about the reason for it not being the normal type of wear and apparel because if the reason is it's a Santa suit, then that argument seems legally incorrect. I agree, Your Honor. And I think it's important to look at the sports clothing line of cases that this court has issued. And that would be the Rydell case as well as the Lemans cases. And that's the exact same competing provisions, the exact same exclusionary note. So a football uniform is not something you wear to work unless you're a football player. I would not be allowed into this courtroom if I wore a football jersey. But it's still normal wearing apparel. It's wearing apparel under Chapter 61 because sports clothing and fancy dress are in the same 1E exclusion to Chapter 95. It's the exact same exclusionary note and the exact same competing provisions. And a football jersey as well as motocross jersey, motocross pants, motocross jacket were all found by this court to meet that exclusion even though you wouldn't wear those every day. You would only wear them to football practice or maybe a costume party if you were going to be a football player. However, those met the exception as under Note 1E. And the Court of International Trade as well following those cases in H.I.M. Fathom found that wetsuits, which again would not be worn on an everyday basis, were considered to be wearing apparel because they're worn in the ordinary manner. Can we read the language in – or to what extent can we read the language in Ruby's 2, normal articles of wearing apparel to be articles of apparel normally worn? We cannot because we know that all costumes… But that makes all the difference in the world, doesn't it? It would, but we know that – Your Honor, my time is about to run. Can I finish? All right. We know that we can't define that language as articles that are worn on an everyday basis because of the fact that fancy dress is defined as costumes. So we know it's a costume. Also, from this court's precedence in the sports clothing cases, we know that articles that are not worn on an everyday basis because they would only be worn in the football practice and they'd only be worn when you're scuba diving or they'd only be worn when you're racing a motorcycle are also not worn on an everyday basis but are wearing apparel of Chapter 16. Let me ask you this. Why did Judge Barnett decide this issue on summary judgment as opposed to just walking through the steps of tariff classification? I believe that Judge Barnett did walk through the steps of tariff classification and both parties moved for summary judgment. Plaintiff moved first, so even though them conceding an issue of law is not binding on this court, I believe it's persuasive and a little disingenuous to come in front of this court and now say that there are issues of material fact. And I believe that Judge Barnett properly dissected Rubies I and – or Rubies II and looked at all the issues and then made a determination based on what the parties asked. I mean, what difference would have – I'm a little – these cases confuse me as to – also as to when summary judgment is appropriate or not. But I don't understand how his analysis would be any different except that he would go through the characteristics of this Santa suit, which he did in detail, and conclude as a matter of fact that they were fancy dress. Well, in the court of international trade, the United States is a defendant. It would be a bench trial. So Judge Barnett would be the gatekeeper and the finder of fact at a trial. Well, that's why I'm confused. What the characteristics of this clothing are agreed upon? They're not in dispute, and it's a two-part – So basically what he did was take the agreed upon factual characteristics and then just apply those undisputed factual – the law to those undisputed factual characteristics. Yes, Your Honor, and it's a two-part inquiry. In the court of international trade, under classification case, the judge needs to look at the tariff terms, define what they are, and then look at the factual issues of the article. And if the article's use, its design, its purpose, its construction are not in dispute, both issues – both questions collapse into one question, and it's appropriate for summary judgment. Thank you. Thank you, Your Honors. Thank you, Your Honors. Okay. Getting back to the issue of sports clothing – Can I just clarify? I think this is confusing, and maybe it's our fault for having loose language. But when we're talking about the phrase normal wearing apparel to come under this exception, and as we said it in Ruby's too, we're not talking about ordinary wear on the street, wear to work kind of – that's not what that normal apparel means, right? No, I think you're right, Your Honor. I think what we're – Because otherwise, nothing would ever fit in the fancy dress exclusion. Exactly, and that's why I don't see the analogy between sporting apparel and a Santa's costume. Well, they're different exclusions. Because the Santa's costume is – sporting clothing is wearing apparel when you're playing a particular sport. Raincoat is wearing apparel when it's raining outside. A snowsuit is wearing apparel when it's snowing. And fancy dress is – Fancy dress is a costume that you wear to a costume party. Fancy dress is a costume that you would wear to a costume party, but if it fits the court's definition of fancy dress, it would have to meet ordinary wearing apparel standards. Now, what I – But again, ordinary wearing apparel standards doesn't mean clothes you would ordinarily wear. No, it's the standard – the way it's manufactured, it would be manufactured in the standards that would be used in the fashion – in the wearing apparel industry. Why doesn't that fit that standard? Excuse me? That's manufactured like a jacket. When somebody is making it, it may be a Santa jacket. It may have decorations, but at the bottom, it's a jacket. But it's not made to wearing apparel standards, and the fact is – I don't know what that means. I mean, jackets – the standards for jackets can run the gamut. I understand that, but it's the way the costume is made. And that's why it's critical to look at Mark Beige's testimony and to look at our expert's testimony that talks about several factors that make it not meeting wearing apparel standards. The armhole is made improperly. It's very uncomfortable. The rise in the pants are made that no wearing apparel would be made that way. It's uncomfortable. The lining is not wearing apparel standards. The material not wearing apparel standards. The question is whether or not you agree with our assessment. Judge Barnett said in his decision that when you decide this issue, it's a two-fold test, and he says that the court must determine the meaning of the relevant tariff provisions, which is a question of law. His second test is the court must determine what the merchandise at issue is, which is a question of fact. That's what we're disputing. What this is, and if we're disputing what it is, it's a question of fact. And if it's a question of fact, then summary judgment is not an appropriate vehicle. And yes, Judge Barnett would have ruled both cases, but we would have had our data in court to call our witnesses, bring testimony, and had a trial before a judge. A bench trial is the same thing as a jury trial. We never had an opportunity to go into court and bring our witnesses in and have them testify before the judge. And we believe that based on Judge Barnett's own ruling, what this merchandise at question is is a question of fact. And if he held that it's a question of fact, then we cannot be granted a summary judgment motion, nor can the government be judged a summary judgment motion. Thank you. Your time. Thank you. Thank you. We thank both sides. All right.